**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**DEBORAH BIGGERS**                                                               **PLAINTIFF**

**v.**                              **NO. 4:22-cv-01245-PSH**

**KILOLO KIJAKAZI, Acting Commissioner**                          **DEFENDANT**
**of the Social Security Administration**

## MEMORANDUM OPINION AND ORDER

In this case, plaintiff Deborah Biggers ("Biggers") challenges the denial of her applications for disability insurance benefits and supplemental security income payments. Biggers does so on the ground that the findings of an Administrative Law Judge ("ALJ") are not supported by substantial evidence on the record as a whole.[1] Specifically, Biggers maintains that her mental impairments were not properly evaluated at step two of the sequential evaluation process, and her residual functional

---

[1]      The question for the Court is whether the ALJ's findings are supported by "substantial evidence on the record as a whole and not based on any legal error." See Sloan v. Saul, 933 F.3d 946, 949 (8th Cir. 2019). "Substantial evidence is less than a preponderance, but enough that a reasonable mind would accept it as adequate to support the [ALJ's] conclusion." See Id. "Legal error may be an error of procedure, the use of erroneous legal standards, or an incorrect application of the law." See Lucus v. Saul, 960 F.3d 1066, 1068 (8th Cir. 2020) (quoting Collins v. Astrue, 648 F.3d 869, 871 (8th Cir. 2011) (citations omitted)).

capacity was erroneously assessed because it does not account for her mental impairments, does not account for her need for a cane, and is not supported by a function-by-function analysis. Biggers also maintains that her past work was not properly characterized, and the ALJ erred in making an alternate finding at step five when she used the Medical-Vocational Guidelines ("Guidelines"). Because substantial evidence on the record as a whole supports the ALJ's findings, her decision is affirmed.

Biggers was born on January 23, 1972, and was forty-seven years old when she filed her applications for disability insurance benefits and supplemental security income payments. She alleged that she became disabled on May 17, 2019, as a result of mental and physical impairments.

With respect to Biggers' mental impairments, the record reflects that she reported anxiety and depression well before the alleged onset date.[2] On three occasions between May 26, 2020, and August 11, 2020, Biggers saw Rebecca Burke ("Burke"), APRN, for help in addressing the symptoms caused by the impairments. See Transcript at 607-612 (05/26/2020), 603-606 (06/24/2020), 940-944 (08/11/2020). At the first presentation, a May 26, 2020, telemedicine consultation, Biggers' complaints were recorded to be as follows:

---

[2]     See, e.g., Transcript at 332 (06/26/2018), 331 (07/30/2018).

> Over the prior two weeks, the patient endorsed having problems with sleep nearly every day, energy and self-esteem more than half the days, and interest, mood, appetite, and concentration for several days.
>
> The patient denied having problems with restlessness and suicidal ideation or thoughts of self-harm over the past two weeks.
>
> The patient reported having anxiety, uncontrollable worrying, and trouble relaxing nearly every day, having widespread worrying, restlessness, and fear of something awful happening for more than half of the days, and having irritability for several days over the last two weeks.

See Transcript at 607-608. A mental status evaluation was largely unremarkable, although Biggers did exhibit an anxious mood and a fearful affect. A generalized anxiety disorder was diagnosed. She was prescribed clonazepam, but it was later discontinued and lorazepam prescribed.

On July 16, 2020, Burke completed an assessment of the limitations caused by Biggers' mental impairments. See Transcript at 614-615. Burke opined that Biggers has significant limitations impacting her ability to perform work-related tasks. For instance, Burke opined that Biggers has difficulty dealing with the public, using judgment, dealing with work-related stress, functioning independently, maintaining attention and concentration, behaving in an emotionally stable manner, and behaving predictably in social situations.

Burke last saw Biggers during an August 11, 2020, telemedicine consultation. See Transcript at 940-944. Although Biggers continued to have an anxious mood and a fearful affect, she reported improvement in the management of her anxiety-related symptoms, and her medication was working well.

Biggers was seen by medical professionals for her physical impairments during the period she saw Burke, and the progress notes from those presentations also include findings and observations about Biggers' mental impairments. The notes reflect that Biggers consistently was oriented to time, place, person, and situation; had an appropriate mood and affect; and had good judgment and insight. See e.g., Transcript at 921-922 (04/13/2020), 599 (05/21/2020), 820 (06/09/2020), 929 (07/17/2020), 806 (07/27/2020), 963 (09/08/2020).

With respect to Biggers' physical impairments, the record reflects that she reported pain in her lower extremities and difficulty walking well before the alleged onset date.[3] On February 11, 2019, or about three months before the alleged onset date, she sought treatment from Dr. Ahmad Rafi, M.D., ("Rafi") at a pain management clinic. Biggers' history of present illness was recorded to include the following:

---

[3]       See, e.g., Transcript at 681 (05/29/2018)

> The patient presents today for assessment of chronic pain as a new referral. ... The pain at times goes to both lower extremities. Patient reports pain score on NRS, at its worse the pain is 10/10, at its least it is 3/10, on an average about 7/10, and right now it is 8/10. Worsening factor(s) include: standing, walking, getting up from sitting or lying position, cold weather, pressure changes and increased activity. Relieving factor(s) include: stopping activities that aggravate pain, rest and taking pain medicine. Other associated symptoms/problems: restrictions on the activities of daily living, difficulty sleeping due to pain and frustration because of pain. Patient reports that pain has been severely affecting quality of life.

See Transcript at 343. Palpation of Biggers' bilateral sacroiliac joints and lumbar facet joints produced pain. She had a "slightly antalgic" gait and station but was able to heel-to-toe, heel walk, and toe walk. See Transcript at 345. Bilateral straight leg raises were negative. Rafi diagnosed, inter alia, chronic lower back pain and fibromyalgia, and he prescribed medication for the pain.

Biggers continued to seek medical attention at the pain management clinic up to, and past, the alleged onset date. See Transcript at 349-353 (05/09/2019), 354-358 (06/05/2019), 485-489 (09/04/2019), 490-494 (11/04/2019), 746-749 (12/19/2019), 750-754 (01/16/2020), 755-758 (03/20/2020), 759-762 (05/11/2020), 763-767 (06/22/2020). At the presentations, she routinely reported difficulties walking and was found to have an antalgic gait and station. She reported some benefit from

procedures that included lumbar medial branch blocks and sacroiliac joint injections, but she continued to experience pain in her lower back, hips, legs, and knees. She was repeatedly diagnosed with impairments that included chronic lower back pain and fibromyalgia, and she was prescribed medication for her pain. The progress note from the November 4, 2019, presentation, is significant because the note contains the following entry: "order for cane given to patient (patient request)." <u>See</u> Transcript at 492.

Biggers was seen by other medical professionals for her physical impairments during the period she saw the professionals at the pain management clinic. The progress notes from those presentations include findings and observations about, <u>inter alia</u>, her gait and station. The notes reflect that she typically had a normal gait and station and used no assistive device to walk. <u>See</u>, <u>e.g</u>. Transcript at 647 (03/17/2020), 820 (06/09/2020). At other times, though, she had an abnormal gait and, on one occasion, used a cane to walk. <u>See</u> Transcript at 806 (07/27/2020).

Biggers' medical records were reviewed by state agency medical consultants as a part of her applications for disability insurance benefits and supplemental security income payments. <u>See</u> Transcript at 60-71, 72-83, 88-97, 98-107. The consultants opined that she has mild mental limitations and is capable of performing light work.

The record contains a summary of Biggers' work history. See Transcript at 199-218. The summary reflects that she has an excellent work history, having worked primarily as a security guard.

Biggers testified during the administrative hearing. See Transcript at 38-52. Her pain causes her back to stiffen and makes it difficult for her to stand and walk. She also has pain in her legs and feet. She cannot walk long distances. Biggers was seeing Burke at the time of the hearing for complaints of anxiety and depression. The impairments make it difficult for Biggers to be in large crowds, and she oftentimes feels stressed out. She had taken, or was taking, Ativan, Wellbutrin, and Cymbalta for her anxiety and depression. Biggers can perform some household chores and spends her days typically painting, sleeping, or just sitting around. She uses a cane to walk, testifying as follows as to her use of a cane:

> Q. How long have you had a cane?
>
> A. Somewhere around a year.
>
> Q. How did you get the cane?
>
> A. Through my pain care specialist that I go to see for pain management. They ordered it for me, because they could tell I wasn't just real steady. And they wanted to get—
>
> Q. Your pain management doctors?

A. Uh-huh. Yes, sir.

Q. You say they ordered it for you?

A. Yeah, well actually they gave me like a prescription, and then I went and gave it to like a medical supply place and got it.

See Transcript at 45-46. Biggers uses the cane daily to stand and walk.

The ALJ found at step two that Biggers has severe impairments in the form of degenerative disc disease, degenerative joint disease, diabetes, obesity, fibromyalgia, and positive ANA. The ALJ found that Biggers' mental impairments, though, are not severe. In so finding, the ALJ found unpersuasive Burke's assessment of Biggers' limitations caused by her mental impairments. The ALJ so found because the assessment is not consistent with, or supported by, the record; Biggers received little mental health counseling; and she improved with "just a few treatments." See Transcript at 18. The ALJ found persuasive the assessment of Biggers' limitations made by state agency professional Dr. Rachel Morrisey, Ph.D., ("Morrisey), who opined that Biggers' mental impairments cause no more than mild limitation in the four functional areas.[4]

---

[4]    The four functional areas are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.

The ALJ then assessed Biggers' residual functional capacity and found that she is capable of performing a full range of light work. As a part of so finding, the ALJ found persuasive the assessments of Biggers' physical limitations made by the state agency physicians, who opined the following:

> David L. Hicks, MD, affiliated with Disability Determination Services, completed a physical residual functional capacity assessment on October 2, 2019. [Hicks] opined that the claimant could lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk for about six hours in an eight-hour workday; and sit for six hours in an eight-hour workday. The claimant can occasionally climb, balance, stoop, kneel, crouch, and crawl ... William Harrison, MD, affiliated with Disability Determination Services, completed a physical residual functional capacity assessment on December 9, 2019. He affirmed the above ... The Administrative Law Judge finds that he above is generally persuasive as it is supported by and consistent with the record as a whole. The record supported that the claimant would be able to perform light exertional work given her impairments. The postural limitations do not appear to be wholly persuasive given her treatment records.

See Transcript at 22.

At step four, the ALJ determined that Biggers' past relevant work was that of a security guard. The ALJ then found the following as to the requirements of that job: "[a] vocational expert identified armed security guard, Dictionary of Occupational Titles ((DOT 372.667-034) as light exertional work as generally performed, but actually performed at medium

work and semi-skilled (SVP 3)." <u>See</u> Transcript at 22. The ALJ concluded that Biggers is capable of performing her past relevant work as it is "generally performed" because the work "does not require the performance of work-related activities precluded by [her] residual functional capacity." <u>See</u> Transcript at 22.

Although the ALJ's analysis could have concluded at step four, she proceeded to step five. There, the ALJ found that because Biggers can perform all of the exertional demands required of light work, the Guidelines direct a conclusion that she is not disabled.

Biggers maintains that the ALJ's findings are not supported by substantial evidence on the record as a whole. Biggers first maintains that her mental impairments are severe, and the ALJ erred at step two when she failed to so find.

At step two, the ALJ is obligated to identify the claimant's impairments and determine if they are severe. An impairment is severe if it has "more than a minimal effect on the claimant's ability to work." <u>See</u> <u>Henderson v. Sullivan</u>, 930 F.2d 19, 21 (8th Cir. 1992) (quoting <u>Hudson v.</u> <u>Bowen</u>, 870 F.2d 1392, 1396 (8th Cir. 1989) (sequential evaluation process may be terminated at step two only when impairment would have no more than minimal effect on claimant's ability to work.))

Were the Court making the determination at step two in the first instance, the Court would likely find that Biggers' mental impairments are severe. The Court, though, is not tasked with making that determination. The Court is instead called upon to determine whether substantial evidence on the record as a whole supports the ALJ's finding that Biggers' mental impairments are not severe. For the reasons that follow, the Court finds that the ALJ could find as she did at step two.

The determination at step two is a medical determination, see Bowen v. Yuckert, 482 U.S. 137 (1987), and there is little medical evidence that Biggers' mental impairments have more than a minimal effect on her ability to work. Although Burke represented that Biggers' mental impairment have more than a minimal effect on her ability to work, the ALJ could and did find Burke's assessment unpersuasive for two reasons.

First, Burke's psychiatric evaluations of Biggers were largely unremarkable, save Biggers' anxious mood and fearful affect. The last time Burke saw Biggers, or after only three presentations, Biggers reported improvement in the management of her anxiety-related symptoms, and her medication was working well. There is nothing in Burke's progress notes to support the significant limitations she identified in her assessment. The assessment is inconsistent with her own progress notes.

Second, other medical professionals made findings and observations about Biggers' mental status. The professionals' progress notes reflect that Biggers consistently was oriented to time, place, person, and situation; had an appropriate mood and affect; and had good judgment and insight. Moreover, although Morrisey did not examine Biggers, Morrisey opined that Biggers' mental impairments cause no more than mild limitation in the four functional areas. Given those findings and observations, which the ALJ credited, Burke's assessment is inconsistent with the record as a whole.

Notwithstanding the foregoing, the ALJ's failure to identify Biggers' mental impairments as severe is ultimately of no legal significance. Once the ALJ proceeds past step two, as she did here, the labeling of an impairment as "severe" or "non-severe" has no legal significance because she must consider all of the claimant's impairments in crafting the claimant's residual functional capacity. See 20 C.F.R. 416.945(e).

Biggers offers a second reason why the ALJ's findings are not supported by substantial evidence on the record as a whole. Biggers maintains that her residual functional capacity was erroneously assessed because it does not account for her mental impairments, does not account for her need for a cane, and is not supported by a function-by-function analysis.

The ALJ is required to assess the claimant's residual functional capacity, which is a determination of the most the claimant can do despite her limitations. See Brown v. Barnhart, 390 F.3d 535 (8th Cir. 2004). The assessment involves a function-by-function evaluation of the claimant's ability to do work-related activities. See Depover v. Barnhart, 349 F.3d 563 (8th Cir. 2003). The assessment is made using all of the relevant evidence in the record. See Jones v. Astrue, 619 F.3d 963 (8th Cir. 2010).

Here, the ALJ evaluated Biggers' mental impairments and need for a cane in assessing her residual functional capacity. The ALJ did not, though, account for the limitations caused by the impairments or her need for a cane in finalizing the assessment. The ALJ simply noted that Biggers is capable of performing a full range of light work. The ALJ additionally identified some of the limitations specific to Biggers that are consistent with her ability to do a full range of light work, e.g., she can lift and/or carry twenty pounds occasionally and ten pounds frequently, she can stand and/or walk for about six hours in an eight-hour workday, and she can sit for six hours in an eight-hour workday. The ALJ's assessment is adequate and is supported by substantial evidence on the record as a whole for the reasons that follow.

With respect to Biggers' mental impairments, the ALJ could and did find that they only cause mild limitations. It is true that Burke observed that Biggers had an anxious mood and fearful affect, but Burke's mental status evaluations of Biggers were otherwise unremarkable. For instance, Burke consistently observed that Biggers' thought process was organized, logical, and goal directed, and her insight/judgment and memory were intact. Moreover, Burke only saw Biggers three times, and by the last presentation, Biggers reported improvement in the management of her anxiety-related symptoms, and her medication was working well. The other medical professionals who saw Biggers during the same period observed that she consistently was oriented to time, place, person, and situation; had an appropriate mood and affect; and had good judgment and insight. Because the ALJ could and did find that Biggers' mental impairments only cause mild limitations, the ALJ could and did decline to account for the limitations in assessing Biggers' residual functional capacity.

With respect to Biggers' need for a cane, the ALJ could and did find that Biggers did not require the use of a cane and, consequently, did not account for the use of a cane in assessing her residual functional capacity. The Court so finds for the following reasons advanced by the Acting Commissioner of the Social Security Administration ("Commissioner"):

... The ALJ recognized that Plaintiff's pain management specialist wrote a prescription for a cane at Plaintiff's request in November 2019, about two-and-a-half months after she filed for disability and six months after her alleged disability onset date ... But the ALJ also found that subsequent medical records militated against including a limitation requiring use of a cane in the RFC finding ... As the ALJ also observed, treatment providers noted a normal gait on several occasions after Plaintiff was prescribed a cane (Tr. 605, 820, 909, 921, 928, 942), she attended "deer camp" in December 2019 (Tr. 748), a cervical MRI in May 2020 showed only "minimal" to "mild" abnormalities (Tr. 741), her medical providers consistently advised her to maintain normal activities (Tr. 351, 356, 492, 748, 752, 757, 761, 765 (repeatedly advising Plaintiff to maintain normal activities and noting that she was "able to perform activities of daily living with current regimen")), and she reported preparing meals and performing household chores with breaks (Tr. 235). Citing substantial evidence contravening Plaintiff's testimony that she required daily indoor and outdoor use of a cane (Tr. 45-46, 48-49), the ALJ reasonably declined to include a cane requirement in the RFC finding ...

Plaintiff contends that the ALJ "misconstrued and mischaracterized" the evidence by finding that she "requested she be given a cane so one was ordered for her[.]" ... Plaintiff's argument is puzzling, as the treatment at which her pain management specialist prescribed a cane unambiguously states "order for cane given to patient (*patient request*)" (Tr. 492) (emphasis added). Furthermore, Plaintiff relies on the cane prescription to the exclusion of other relevant evidence the ALJ considered ... And she does not identify a single medical record corroborating her alleged daily use of a cane [footnote omitted], citing only a handful of treatment records noting an antalgic gait. ... The ALJ, however, duly noted that the record showed an antalgic gait at times but, inconsistent with Plaintiff's testimony, a normal gait at other times, ... (Tr. 20-21, 605, 820, 909, 921, 928, 942). Plaintiff fails to demonstrate that the evidence is inconsistent with the ALJ's findings.

See Docket Entry 15 at CM/ECF 4-5. Admittedly, there was one instance—in July of 2020—in which a medical professional observed Biggers to use a cane to walk. See Transcript at 806. The Court agrees with the Commissioner, though, that the progress note does not establish Biggers' need for daily use of a cane. The prior month, the same professional observed Biggers to have a normal gait and no mention was made of her use of the cane. See Transcript at 820. Moreover, progress notes from other medical professionals in July of 2020 indicate that Biggers had a normal gait and station and no mention was made of her use of a cane. See Transcript at 928, 942.

With respect to the ALJ's function-by-function analysis, it is certainly not comprehensive. It is, though, sufficient. The ALJ identified the relevant limitations specific to Biggers that are consistent with her ability to do a full range of light work, e.g., the extent to which she can lift and/or carry, the extent to which she can stand and/or walk, and the extent to which she can sit, and the ALJ's findings are supported by the record. It was not necessary for the ALJ to have identified limitations that are not specific to Biggers or not supported by the record, e.g., the limitations caused by her mental impairments. Those limitations are mild and do not impact her ability to do a full range of light work.

Biggers offers a third reason why the ALJ's findings are not supported by substantial evidence on the record as a whole. Biggers maintains that her past work was not properly characterized. She so maintains because the ALJ made no determination as to the specific functions required of her past work and "ignored the opportunity to request the [vocational expert] to examine the suitability of the past work with consideration of the [residual functional capacity assessment] determined by the ALJ." See Docket Entry 13 at CM/ECF 18.

At step four, the ALJ must determine if the claimant has the residual functional capacity to perform her past relevant work. In making the determination, the ALJ must fully investigate and make explicit findings as to the mental and physical demands of the claimant's past relevant work, and compare those demands with what the claimant is capable of doing, before determining that she is capable of performing her past relevant work. See Young v. Astrue, 702 F.3d 489 (8th Cir. 2013). The ALJ may discharge her duty of fully investigating and making explicit findings as to the demands of the claimant's past relevant work by "'referring to the specific job descriptions in the Dictionary of Occupational Titles [(DOT)] that are associated with the claimant's past relevant work.'" See Id. at 491 (quoting Pfitzner v. Apfel, 169 F.3d 566, 569 (8th Cir. 1999)).

The Court is satisfied that the ALJ fully investigated and made explicit findings as to the mental and physical demands of Biggers' past relevant work, and compared those demands with what she is capable of doing, before determining that she is capable of performing her past relevant work. Specifically, the ALJ questioned Biggers about the demands of her past relevant work. <u>See</u> Transcript at 51-52. The ALJ also questioned a vocational expert about the work. <u>See</u> Transcript at 53. The vocational expert identified the work as that of an "armed security guard," DOT 372.667-034. <u>See</u> Transcript at 53. The vocational expert testified that the DOT characterized the work as light as generally performed, but based on what she heard during the administrative hearing, she "put [the work] at the medium level." <u>See</u> Transcript at 53. The ALJ found that the vocational expert's testimony was consistent with the DOT. <u>See</u> Transcript at 22. The ALJ then compared the demands of the work as generally performed with what Biggers is capable of doing.[5] The ALJ found that Biggers is capable of performing the work and could therefore return to her past relevant work. Given the ALJ's analysis and findings, the Court is not prepared to say that the ALJ erred at step four.

---

[5] For the reasons outlined above, the ALJ did not err in assessing Biggers' residual functional capacity and could find that she is capable of performing the full range of light work.

Biggers faults the ALJ for "ignor[ing] the opportunity to request the [vocational expert] to examine the suitability of the past work with consideration of the [residual functional capacity assessment] determined by the ALJ." See Docket Entry 13 at CM/ECF 18. There is no merit to Biggers' assertion. For the reasons outlined above, the Court is satisfied that the ALJ fully investigated and made explicit findings as to the mental and physical demands of Biggers' past relevant work, and compared those demands with what she is capable of doing, before determining that she is capable of performing her past relevant work.

Biggers offers a fourth reason why the ALJ's findings are not supported by substantial evidence on the record as a whole. Biggers maintains that the ALJ erred in making an alternate finding at step five when she used the Guidelines.

At step five, the ALJ is called upon to determine whether there is work a hypothetical individual with the claimant's limitations could perform. The ALJ may use the Guidelines in making that determination if the claimant's non-exertional impairments do not diminish or significantly limit her residual functional capacity to perform the full range of Guideline-listed activities. See Brock v. Asture, 674 F.3d 1062 (8th Cir. 2012).

There is no merit to Biggers' assertion for at least two reasons. First, the ALJ's finding at step four—Biggers is capable of performing her past relevant work—is supported by substantial evidence on the record as a whole and is an adequate basis alone for affirming the ALJ's decision. Second, notwithstanding the foregoing, the ALJ could and did find that Biggers' non-exertional impairments do not diminish or significantly limit her residual functional capacity to perform the full range of Guideline-listed activities. Specifically, the ALJ could and did find that Biggers' mental impairments cause only mild limitations, as do her postural and ambulatory impairments.

The question at bar is whether the ALJ's findings are supported by substantial evidence on the record as a whole. "It is not the role of the court to re-weigh the evidence and, even if this court would decide the case differently, it cannot reverse the [ALJ's] decision if that decision is supported by good reason and is based on substantial evidence." See Dillon v. Colvin, 210 F.Supp.3d 1198, 1201 (D.S.D. 2016). In fact, the Court may not reverse the ALJ's decision merely because substantial evidence would have supported an opposite decision. See Id. Here, the ALJ could find as she did as her findings are supported by substantial evidence on the record as a whole.

For these reasons, the Court finds that the ALJ's findings are supported by substantial evidence on the record as a whole. Biggers' complaint is dismissed, all requested relief is denied, and judgment will be entered for the Commissioner.

IT IS SO ORDERED this 18th day of September, 2023.

_____
UNITED STATES MAGISTRATE JUDGE